UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

-against-

S5 03 Crim. 1364 (LAK)

OTIS PARKES,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

Otis Parkes was convicted after trial of conspiracy to commit robbery and attempted robbery, of using, carrying and possessing a firearm in connection with the robbery, with the murder of Ruben Medina, and with being a felon in possession of a firearm. He was sentenced principally to a term of life imprisonment. Some time after the trial, the government disclosed that his co-defendant, Duane Beaty, who pleaded guilty and testified against Parkes at trial, had taken steps before he pled guilty to kill a civilian witness. Parkes now moves for a new trial.

*The Legal Standard*

There is no claim here that the government knew of Beaty's attempt prior to trial. Parkes claims, however, that the government "should have uncovered evidence of efforts by Beaty to kill the civilian witness during its proffer sessions." (Def. Br. 22) This contention is wholly unsupported.

Parkes next asserts that Beaty perjured himself and that "reversal is compelled" even

if the government was not negligent "upon a finding that the jury would have altered its verdict if it had the opportunity to appraise the impact of the newly discovered evidence 'not only upon the factual elements of the government's case but also upon the credibility of the government's witness.'" (*Id.* 20 (quoting *United States v. Stofsky,* 527 F.2dc 237, 246 (2d Cir. 1975)) The premise that Beaty perjured himself, however, also is unsupported.

Parkes points to the following testimony:

> "Q Is it your testimony that you have only spoken to Mr. Scudder [the AUSA] on two occasions before you came here today? A No. I might have spoken to him on more than two occasions. I'm not quite certain how many times I've spoken to him. <u>But I had to explain to them the situation clearly so they can understand my part of what's going on so they can see that I'm telling the truth</u>.
>
> "Q You also – when you were trying to tell them the truth, Mr. Beaty, you also explained to them about things you had done in the past, didn't you? A <u>I had to explain to them about my past, yes</u>." (Tr. 295 (emphasis added))

This, he argues, constituted testimony that Beaty "truthfully told the government of his entire criminal past." (Def. Reply Mem. 2)

Parkes over reads the testimony and ignores pertinent case law. The quoted testimony arguably might give rise to an inference that Beaty was claiming that he had bared his soul, but such an inference, even if reasonable, would not be compelling. Certainly Beaty did not unequivocally claim to have told the prosecutors of all of his prior misdeeds. Had counsel thought clarification of that point important, and absent 20-20 hindsight there is no reason to think that it was, he could have asked the next question.

This point is well illustrated by *Bronston v. United States,* 409 U.S. 352 (1973), where the Supreme Court wrote that "an unresponsive answer, true and complete on its face," is not perjury, even where it is intended "to mislead or divert the examiner." *Id.* at 359. This follows

directly from the fact that perjury consists of the wilful statement under oath of "any material matter which [the witness] does not believe to be true." 18 U.S.C. § 1621. That fact that "in casual conversation" the interpretation advocated by Parkes "might reasonably be drawn" is beside the point. *Bronston,* 409 U.S. at 358.

In this case, Beaty said no more than that he had to (1) "explain to them the situation clearly" and (2) "explain to them about [things he had done] in my past." There is no suggestion that Beaty did not believe both statements to be true. Even if they misled or diverted the examiner, they were not perjurious.

The standard that governs Parkes' motion in the absence of any negligence by the government or perjury by Beaty is strict. *See United States v. Gambino,* 59 F.3d 353, 364 (2d Cir. 1995), *cert. denied,* 517 U.S. 1187 (1996). As this evidence is newly discovered, and there is no suggestion that Parkes should have discovered it before or during trial, he is entitled to relief only if the evidence of Beaty's action "is so material and noncumulative that its admission 'would probably lead to an acquittal.'" *United States v. Zagari,* 111 F.3d 307, 322 (2d Cir. 1997), *cert. denied,* 522 U.S. 583 (1997) (quoting *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir. 1992)). Moreover, new impeachment evidence, which is what is at issue here, "is *not* material, and thus a new trial is *not* required" when it "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." *United States v. Wong,* 78 F.3d 73, 79 (2d Cir. 1996) (emphasis in original) (quoting *United States v. Payne,* 63 F.3d 1200, 1210 (2d Cir. 1995), *cert. denied,* 516 U.S. 1165 (1996) (internal quotation marks omitted)).

*Analysis*

Having determined the governing legal standard, the analysis of Parkes' contention is straightforward.

First, Beaty's testimony was subject to impeachment on several grounds, and he was vigorously and effectively cross-examined. It is difficult to imagine that this additional information would have made the attack on his credibility materially more effective.

Second, Beaty's steps to kill a potential witness did not concern the core of his testimony – the robbery and murder of Ruben Medina. His testimony about those events was extensively corroborated by the testimony of the other robbery victims, the facts surrounding Parkes' flight from his car shortly after the robbery, the evidence tying Parkes to the robbery that was recovered from his car, the DNA evidence tying Parkes to the crime scene, and Parkes' confession to Keisha Gayle.

In all of the circumstances, the Court is not persuaded that the newly discovered evidence would have any material tendency to produce a different verdict, let alone a probability that it would do so. Accordingly, Parkes' motion for a new trial is denied.

SO ORDERED.

Dated: December 16 2005

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)