UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

OTIS PARKES,

         *Defendant.*

**03 Cr. 1364 (LAK)**
**16 Civ. 04771 (LAK)**

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO OTIS PARKES'S SECOND MOTION UNDER 28 U.S.C. § 2255**

DAMIAN WILLIAMS
*United States Attorney for the
Southern District of New York
Attorney for the United States
of America*

DANIELLE M. KUDLA
Assistant United States Attorney
    *Of Counsel*

# Table of Contents

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................... 2

    A. Parkes's Offense Conduct ................................................................................... 2

    B. Parkes's Indictment, Trial, and Sentencing ........................................................ 3

    C. Parkes's Post-Conviction Litigation .................................................................... 7

        1. Parkes's First Appeal and Sentencing on Remand ........................................ 7

        2. Parkes's First Section 2255 Motion ............................................................... 8

        3. The Second Section 2255 Motion .................................................................. 9

ARGUMENT .............................................................................................................. 11

    A. Applicable Law ................................................................................................. 11

        1. Second or Successive Section 2255 Motions ............................................... 11

        2. The *Davis* and *Taylor* Decisions .............................................................. 13

    B. Parkes's Section 924(c) Claim Does Not Satisfy AEDPA's Gatekeeping Requirements 14

        1. *Taylor* Is a Statutory Decision and Not a New Rule of Constitution Law; *Davis* Is a New Rule of Constitution Law, But Parkes Must Show that He Was Sentenced Under the Residual Clause ............................................................................................... 14

        2. Parkes's Section 924(c) Conviction Was Predicated in Part on the Elements Clause. 16

            *a. Based on the Record, Parkes's Section 924(c) Conviction Was Predicated in Part on the Elements Clause* ............................................................................................... 16

            *b. Based on Background Legal Conditions, Parkes's Section 924(c) Conviction Was Predicated in Part on the Elements Clause* ............................................................ 19

        3. Parkes Has Failed to Establish That It Is More Likely Than Not That His Section 924(c) Conviction Was Predicated on the Residual Clause ...................................... 20

        4. Neither *Taylor* nor Other Out-of-District Cases Alters the Gatekeeping Analysis for Parkes's Claim ...................................................................................................... 23

CONCLUSION ........................................................................................................... 25

# Table of Authorities

**Cases**

*Adams v. United States*, 155 F.3d 582 (2d Cir. 1998) ................................................... 11

*Beeman v. United States*, 871 F.3d 1215  (11th Cir. 2017) ................................................ 24, 25

*Bell v. United States*, 296 F.3d 127 (2d Cir. 2002) ....................................................... 12

*Bousley v. United States*, 523 U.S. 614 (1998) .......................................................... 26

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ............................................................. 25

*Dimott v. United States*, 881 F.3d 232 (1st Cir. 2018) .................................................. 24, 25, 26

*Galviz Zapata v. United States*, 431 F.3d 395 (2d Cir. 2005) ........................................... 14

*Hall v. United States*, --- F.4th ---, 2023 WL 307429 (2d Cir. Jan. 19, 2023) ........................... 17

*In re Chance*, 831 F.3d 1335 (11th Cir. 2016) ........................................................... 25

*Johnson v. United States*, 576 U.S.  591 (2015) .......................................................... 9

*Massey v. United States*, 895 F.3d 248 (2d Cir. 2018) ................................................ 13, 18, 23, 26

*Mata v. United States*, 969 F.3d 91 (2d Cir. 2020) ...................................................... 12

*Napoli v. United States*, 45 F.3d 680 (2d Cir. 1995) .................................................... 14

*Parkes v. United States*, 16-1985 (2d Cir. May 12, 2020) ................................................ 9

*Parkes v. United States*, No. 03 Cr. 1364, 2010 WL 3958784  (S.D.N.Y. Sept. 8, 2010) ............. 9

*Parkes v. United States*, No. 10-2681 (2d Cir. Jan. 3, 2011) ............................................ 9

*Polizzi v. United States*, 926 F.2d 1311 (2d Cir. 1991) ................................................ 14

*Savoca v. United States*, 21 F.4th 225 (2d Cir. 2021) ................................................ 12, 13, 21, 23

*Savoca v. United States*, No. 20-1502, 2022 WL 17256392 (2d Cir. Nov. 29, 2022) 12, 17, 18, 23

*Tyler v. Cain*, 533 U.S. 656 (2001)................................................................................. 13

*United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018)..................................................... 23

*United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019)..................................................... 15

*United States v. Brown*, 52 F.3d 415 (2d Cir. 1995).................................................. 21, 22

*United States v. Clay*, 921 F.3d 550 (5th Cir. 2019).................................................. 24, 25

*United States v. Davis*, 139 S. Ct. 2319 (2019) ............................................. 1, 9, 11, 15

*United States v. Frady*, 456 U.S. 152 (1982)................................................................. 25

*United States v. Galicia-Delgado*, 130 F.3d 518 (2d Cir. 1997) ................................... 21

*United States v. Geozos*, 870 F.3d 890 (9th Cir. 2017) ................................................. 25

*United States v. Parkes*, 497 F.3d 220 (2d Cir. 2007) ................................................. 7, 8

*United States v. Parkes*, No. 08-1124 (2d Cir. Nov. 26, 2008) ....................................... 8

*Potter v. United States*, 887 F.3d 785 (6th Cir. 2018)…………………………….…………26

*United States v. Taylor*, 142 S. Ct. 2015 (2022).......................................... 1, 11, 15, 16

*United States v. Washington*, 890 F.3d 891 (10th Cir. 2018) ........................................ 24

*United States v. Winston*, 850 F.3d 677 (4th Cir. 2017) ................................................ 25

*Walker v. United States*, 900 F.3d 1012 (8th Cir. 2018)........................................... 18, 26

*Washington v. United States*, 868 F.3d 64 (2d Cir. 2017) ............................................. 17

*Williams v. United States*, 927 F.3d 427 (6th Cir. 2019).............................................. 24

## Statutes

18 U.S.C. § 924 (c)(3)(A) ........................................................................................ 15, 20

18 U.S.C. § 924 (c)(3)(B) .............................................................................................. 15

18 U.S.C. § 924(c) ......................................................................................................... 14

28 U.S.C. § 2244(b)(2)(A) ............................................................................................. 1, 14

28 U.S.C. § 2244(b)(2)(A); ........................................................................................... 11, 25

28 U.S.C. § 2244(b)(3)(C) ............................................................................................ 12, 13

28 U.S.C. § 2244(b)(4) .................................................................................................. 13

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant Otis Parkes's successive 28 U.S.C. § 2255 motion filed on November 23, 2022.  Parkes claims that his conviction on Count Three of the Indictment, for using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), must be vacated because its predicate offenses, Hobbs Act robbery conspiracy and attempted Hobbs Act robbery, are no longer valid crimes of violence in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Taylor*, 142 S. Ct. 2015 (2022).

Parkes's claim must be dismissed because it fails to satisfy the relevant gatekeeping requirement for a successive Section 2255 motion—that his claim "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme court, that was previously unavailable," 28 U.S.C. § 2244(b)(2)(A).  Parkes contends that he meets this standard because his claim relies on *Davis*, which ruled unconstitutional the residual clause of Section 924(c)'s definition of a crime of violence.  But for a successive Section 2255 motion to rely on a constitutional ruling striking down a residual clause, a defendant must show that his sentence was based on the residual clause.  Parkes has not made that showing here.  Although robbery conspiracy qualified as a crime of violence under the residual clause, attempted robbery qualified as a crime of violence under Section 924(c)'s elements clause.  There is no reason to believe that Parkes's conviction was more likely predicated on the robbery conspiracy, so there is no basis to conclude that his sentence was based on the residual clause.  Accordingly, Parkes has not shown that his claim relies on a new rule of constitutional law, and his successive Section 2255 motion must be dismissed.

**BACKGROUND**

**A. Parkes's Offense Conduct**

Otis Parkes was convicted of multiple counts arising out of his participation in a botched robbery targeting drugs and drug proceeds, during which the victim was shot and killed by another co-conspirator.  On June 17, 2003, at approximately 3:00 a.m., Parkes and two co-conspirators entered a Bronx apartment in the middle of the night armed with guns and in search of drugs and drug money.  (Tr. 58, 69, 120, 162, 269, 272, 275.)  During the course of the attempted robbery, Parkes and his co-conspirators grabbed a 15 year old girl by the neck, threw her onto a bed, and put a plastic bag over her head.  (Tr. 58-59.)  They also pistol-whipped a 65-year-old man, causing him to bleed from the head, and duct-taped his hands behind his back.  (Tr. 179, 182-183; PSR ¶ 15.)  For his part, Parkes duct taped the individuals in the apartment as his co-conspirators searched for drugs and drug money that they thought would be there.  (Tr. 60, 88, 100, 277-284.)

The main target of the robbery was a drug dealer named Ruben Medina.  (Tr. 53-56, 200, 265, 280.)  Parkes and one of his co-conspirators had been approached days before and told about a plan to rob Medina, a "drug dealer that had money and drugs on the table selling out of a little room."  (Tr. 265.)  Parkes readily agreed to participate.  (Tr. 266.)  It did not take long, however, for the robbery to go awry.  In the early morning hours of June 17, 2003, Parkes drove his co-conspirators to Medina's apartment at 1660 Monroe Avenue.  (Tr. 272.)  During the drive, the three men confirmed that each of them was "packing"—i.e., carrying a gun.  (Tr. 272; PSR ¶ 14.)  The three men entered Medina's building with their guns drawn as they walked up the stairs to Medina's apartment.  (Tr. 275; PSR ¶ 14.)  Once inside the apartment, Parkes and his co-conspirators found an individual asleep and encountered Medina and a young girl entering the

2

apartment.  (Tr. 277-279; PSR ¶ 14.)  Parkes restrained the individuals in the apartment with duct tape while one co-conspirator searched for Medina's marijuana stash and the other shot Medina in the head and twice in the back for resisting.  (Tr. 61, 97-98, 121, 162, 282-284; PSR ¶ 16.)  Shortly after the shooting, Parkes and his co-conspirators fled the apartment into Parkes's Jeep.  (Tr. 284.)

Approximately fifteen minutes after a 911 call was reported in the area, police found Parkes and one of his co-conspirators standing next to the getaway vehicle.  (Tr. 40-41, 62, 107.)  Parkes was standing next to the driver's side door of his Jeep and on the driver's-side floor there was a .40 Smith & Wesson semi-automatic pistol and black leather gloves with blood that matched Parkes and the 64-year-old man who was pistol-whipped during the robbery.  (Tr. 105, 143, 150, 162, 187-188, 216, 229-232, 263, 274, 288, 341-342.)  Also in Parkes's Jeep was the murder victim's cell phone and other property from the apartment.  (Tr. 105, 146-148, 216.)  When the police pulled up to Parkes and his co-conspirator that night and began to ask questions, Parkes ran. (Tr. 229-232, 288.)  Approximately, three weeks later Parkes told an acquaintance that "him, his brother and someone else went somewhere,  . . . they was in a building . . . they was looking for something . . . and he heard a shot, a gunshot and . . . it was the third person that was with them who did it and he and his brother left in his Jeep."  (Tr. 162.)  Parkes said that "they had guns" and the person who was shot died.  (Tr. 162.)  After the shooting, Parkes said that "they left and he drove, . . . and not too long after the cops came and they searched the car and they found the gun in the car and that's when he ran from the scene." (Tr. 162-163.)

### B.   Parkes's Indictment, Trial, and Sentencing

On October 7, 2004, a grand jury in the Southern District of New York returned Indictment S5 03 Cr. 1364 (LAK), charging Parkes with murder, robbery, and firearms offenses arising from the attempted armed robbery of Medina on June 17, 2003, in the Bronx, New York.  Count One

charged Parkes with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; Count Two charged Parkes with attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951 and 2; Count Three charged Parkes with using, carrying, and possessing a firearm during, in relation to, and in furtherance of a crime of violence, to wit—the crimes charged in Counts One and Two, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2; Count Four charged Parkes with using, carrying, and possessing a firearm during, in relation to, and in furtherance of a crime of violence, to wit—the crimes charged in Counts One and Two, and in the course of those crimes, causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(i)(1) and 2[1]; and Count Five charged Parkes with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Trial against Parkes began on October 21, 2004.  On October 26, 2004, the Court charged the jury.  The Court instructed the jury regarding "robbery" as follows:

> In this case the crime of robbery is central to most, probably all of the counts in the Indictment, so I'm going to begin by instructing you on the definition of robbery because you are going to use that definition in everything you do.
>
> Under federal law, robbery is defined as the *unlawful taking or obtaining of personal property of another against his will by threatening or actually using force, violence or fear of injury to person or property.*
>
> . . .
>
> Whenever I refer to robbery in these instructions, I am referring to robbery as I have just defined it for you.

---

[1] On May 4, 2021, the Court granted Parkes's motion to vacate his conviction on Count Four because it could no longer stand after *Davis*, because the jury instructions (contrary to the Indictment) predicated Count Four solely on a guilty verdict on Count One—conspiracy to commit Hobbs Act robbery.  (Tr. 506, 546.)

(Tr. 477 (emphasis added).)  The Court further explained what qualified as "actual or threatened force, violence or fear of injury" for the purposes of determining whether this element was satisfied:

> The definition of robbery requires that the taking of property be against the victim's will by actual or threatened force, violence or fear of injury, whether immediate or in the future.  A robbery does not require that force, violence and fear were all used or all threatened.  A robbery has occurred, assuming all the other elements are met, if the alleged robbers used any of these methods to take property.

(Tr. 477-478.)  The Court continued by describing that, in determining whether the defendant obtained property through the use or threat of fear, the jury could consider circumstantial evidence, including the situation and actions of people involved. (Tr. 479.)  The Court also described that, in determining whether the defendant threatened force to obtain property, the jury should consider whether a reasonable person would have been fearful in the circumstances.  (Tr. 478-479.)

After defining "robbery" and instructing the jury to apply this definition throughout the remaining instructions, the Court instructed the jury that the Government sought to convict the defendant of attempted robbery—either as the principal actor or as an aider and abettor.  (Tr. 495.)  Under the first theory, the Court instructed the jury that the Government must prove the following elements beyond a reasonable doubt to prove Count Two, which charged attempted Hobbs Act robbery:

> The first element is that . . . the defendant intended to commit the crime of robbery *as I have defined that for you already*.
>
> The second element is the one that requires that he have taken a substantial step toward that end.

(Tr. 496 (emphasis added).)  The Court explained the meaning of "substantial step":

> In determining whether his actions amounted to a substantial step towards the commission of a robbery, it is necessary to distinguish between mere

preparation on the one hand and the actual doing of the criminal deed on the other. Mere preparation, which may consist of planning the offense or devising, obtaining, or arranging a means for its commission, is not an attempt, although sometimes some preparations may amount to an attempt.  The acts of a person who intends to commit a crime will constitute an attempt when the acts themselves clearly indicate an intent to commit the crime and the acts are a substantial step in the court of conduct planned to culminate in the commission of the crime.

(Tr. 496-497.)  The Court then explained aiding and abetting liability:

In order to aid and abet in the commission of a crime, it is necessary that the defendant willfully and knowingly associate himself in some way with the crime and that he willfully and knowingly seek by some act to help make the crime succeed.

(Tr. 498.)  The Court also described that, in determining whether the defendant aided or abetted

the attempted robbery charge, the jurors should ask themselves:

First of all, did he participate in the attempted robbery as something he wanted to bring about? Second, did he associate himself with the criminal venture knowingly and willfully? Third, did he, by his actions, seek to make the criminal venture succeed?

(Tr. 499.)

The Court instructed the jury that the Government must prove the following elements

beyond a reasonable doubt to prove Count Three, using, carrying, and possessing a firearm during

an in relation to a crime of violence, in violation of 18 U.S.C. § 924(c):

First that, on or about June 17, 2003, Otis Parkes used or carried or possessed a firearm;

Second, that Otis Parkes *used or carried or possessed the firearm on that occasion during and in relation to a crime of violence, in this case the robbery conspiracy charged in Count One or the attempted robbery charged in Count Two, or that he possessed a firearm in furtherance of those same crimes*; and

Third, that Otis Parkes acted knowingly, willfully, and unlawfully.

6

(Tr. 501-502 (emphasis added).)   In explaining the second element of Count Three, the Court instructed the jury that the robbery conspiracy charged in Count One and the attempted robbery charged in Count Two were "crimes of violence under the law."  (Tr. 503.)  The Court thereafter repeated its aiding and abetting instruction with respect to Count Three.  (Tr. 504.)

On October 27, 2004, the jury found Parkes guilty on all counts.  (Tr. 556, 570, 579.)

On February 25, 2005, the Court sentenced the defendant to concurrent terms of 240 months' imprisonment on Counts One, Two, Four, and Five, and a consecutive term of life imprisonment on Count Three.   (Judgment, *United States v. Parkes*, 03 Cr. 1364 (LAK) (S.D.N.Y. Feb. 25, 2005), Dkt. No. 50).

## C.  Parkes's Post-Conviction Litigation

### 1.  <u>Parkes's First Appeal and Sentencing on Remand</u>

Parkes filed a timely appeal of his conviction and sentence, arguing that (1) there was insufficient evidence to prove a nexus with interstate commerce under the Hobbs Act, 18 U.S.C. § 1951(a); (2) the Court abused its discretion by allowing the Government to reopen its case to adduce (some of) that evidence; (3) there was insufficient evidence to support *Pinkerton* liability for the murder; (4) the Court abused its discretion by refusing to grant a new trial based on newly discovered evidence that a cooperating witness had plotted to kill another witness; and (5) the prosecutor made prejudicial statements in summation.  *United States v. Parkes*, 497 F.3d 220, 223 (2d Cir. 2007), *cert. denied,* 552 U.S. 1220 (2008).  Parkes did not raise any arguments related to whether conspiracy to commit Hobbs Act robbery or attempted Hobbs Act robbery were crimes of violence within the meaning of 18 U.S.C. § 924(c).  The Second Circuit affirmed the convictions, but vacated the sentence and remanded for resentencing because: (1) the statutory

7

maximum for Count Five, in violation of § 922(g), was 120 months' imprisonment; and (2) Count Three, in violation of § 924(c), was a lesser included offense of Count Four, in violation of § 924(i), so the Court could not impose sentences on both. *Parkes*, 497 F.3d at 234.

On remand, the Court resentenced Parkes to concurrent terms of 240 months' imprisonment on Counts One and Two; a concurrent term of 120 months' imprisonment on Count 5; and a consecutive term of life imprisonment on Count 3. (Amended Judgment, *United States v. Parkes*, 03 Cr. 1364 (LAK) (S.D.N.Y. Mar. 27, 2008). The Second Circuit summarily affirmed. *United States v. Parkes*, No. 08-1124 (2d Cir. Nov. 26, 2008).

### 2. **Parkes's First Section 2255 Motion**

On December 18, 2009, Parkes filed a *pro se* Section 2255 motion challenging his conviction and sentence (the "First Section 2255 Motion"). (Dkt. No. 1, 09-cv-10284.) Parkes again did not raise any arguments challenging whether conspiracy to commit Hobbs Act robbery or attempted Hobbs Act robbery were crimes of violence within the meaning of 18 U.S.C. § 924(c). (Orders, *United States v. Parkes*, 03 Cr. 1364 (LAK) (S.D.N.Y. Feb. 5, 2010; Apr. 22, 2010; June 15, 2010; and Sept. 8, 2010), Dkt Nos. 126, 130, 131, 135). Instead, Parkes argued that he received ineffective assistance of counsel because (1) his attorney purportedly failed to properly to advise him of a plea offer or to adequately inform him of the advantages and disadvantages of going to trial and (2) the presentence report failed to properly calculate his Guidelines. *See Parkes v. United States*, No. 03 Cr. 1364, 2010 WL 3958784, at *1 (S.D.N.Y. Sept. 8, 2010). On January 3, 2011,

this Court denied Parkes's motion for a certificate of appealability as to the First Section 2255 Motion. *Parkes v. United States*, No. 10-2681 (2d Cir. Jan. 3, 2011).

### 3.  The Second Section 2255 Motion

Following *Johnson v. United States*, 576 U.S.  591 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019), the Second Circuit granted Parkes leave to file a successive Section 2255 motion challenging Counts Three and Four.  *Parkes v. United States*, 16-1985 (2d Cir. May 12, 2020).  On July 31, 2020, Parkes requested that the Court vacate his Section 924(c) and 924(i) convictions, predicated on conspiracy to commit Hobbs Act robbery, which was no longer valid after *Davis*, and attempted Hobbs Act robbery, which counsel argued was also invalid.  (Dkt. No. 197.)  On September 4, 2020, the Government agreed that Count Four, which was predicated only on Hobbs Act robbery conspiracy, could no longer stand in light of *Davis*, but opposed vacating Parkes's conviction on Count Three on the following bases:  (1) attempted Hobbs Act robbery was a crime of violence under the force clause; (2) Parkes had procedurally defaulted his vagueness challenge; and (3) Parkes failed to satisfy the gatekeeping requirements of Section 2244(b) for a successive filing.  (Dkt. No. 204.)  On May 4, 2021, this Court entered an order vacating Parkes 924(i) conviction on Count Four because it was uncontested that it was predicated solely on Hobbs Act robbery conspiracy, which was no longer a valid predicate offense after *Davis*. (Dkt. No. 213 at 2.)  The Court, however, denied Parkes's motion to vacate with respect to Count Three, finding that it was supported by attempted Hobbs Act robbery, which  remained a valid predicate offense. (*Id.*).  The Court also denied a certificate of appealability, finding that any appeal would not be

taken in good faith within the meaning of 28 U.S.C. § 1915(a)(3).   (*Id.* at 3.)  On May 18, 2021, Parkes appealed the Court's order.  (Dkt. No. 216; *United States v. Parkes*, 21-1324, Dkt. No. 1.)

On June 16, 2021, the Second Circuit stayed Parkes's appeal pending the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022).  *Parkes v. United States*, 21-1324, Dkt. No. 19.  On June 21, 2022, the Supreme Court decided *Taylor.*  On June 22, 2022, Parkes filed a motion to vacate the stay, issue a certificate of appealability with respect to the validity of Count Three, vacate the Court's denial of the Section 2255 motion on that issue, and remand for further proceedings.  *Parkes*, 21-1324, Dkt. No. 28.  On July 11, 2022, the Government filed a letter noting that it consented to Parkes's requested relief *without prejudice* to its right to address on remand whether Parkes's motion satisfies any other applicable requirements of relief, including the requirements applicable to second or successive Section 22255 motions pursuant to 28 U.S.C. §§ 2255(h) and 2244(b).  *Parkes*, 21-1324, Dkt. No. 32.

On October 14, 2022, the Second Circuit terminated the previously imposed stay of Parkes's appeal, granted a certificate of appealability on the issue of whether Parkes's 18 U.S.C. § 924(c) conviction remains supported by any valid crime of violence predicate, and remanded for further proceedings.  *Parkes*, 21-1324, Dkt. No. 47.   The Second Circuit directed the Court to "decide in the first instance whether the case law underlying Appellant's claim may be applied retroactively to cases on collateral review and whether Appellant's § 924(c) conviction is still supported by any valid crime-of-violence predicate."  *Id.*

In his Successive Section 2255 Motion, filed on November 23, 2022, Parkes argues that his Section 924(c) conviction must be vacated and dismissed because conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery are not predicate crimes of violence pursuant to

*United States v. Davis*, 139 S. Ct. 2319 (2019) and *United States v. Taylor*, 142 S. Ct. 2015 (2022).

(Dkt. No. 227.)  Parkes's claim, which does not satisfy the gatekeeping requirements for a second

or successive Section 2255 motion, must be dismissed.

## ARGUMENT

### A.  Applicable Law

#### 1.  Second or Successive Section 2255 Motions

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "places stringent

limits on a prisoner's ability to bring a second or successive application for a writ of habeas

corpus." *Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998). Under AEDPA, a claim in a

second or successive Section 2255 motion that was not presented in a prior motion "shall be

dismissed unless," as relevant here, "the applicant shows that the claim relies on a new rule of

constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was

previously unavailable." 28 U.S.C. § 2244(b)(2)(A); *see also id.* § 2255(h)(2). A claim that relies

on a decision that interprets a statute rather than the Constitution does not satisfy this standard.

*E.g.*, *Mata v. United States*, 969 F.3d 91, 93-94 (2d Cir. 2020) (decision that "was simply

construing a statute" did not qualify).

A prisoner seeking to file a second or successive motion under Section 2255 "must clear

two hurdles." *Savoca v. United States*, 21 F.4th 225, 230 (2d Cir. 2021), *vacated in part on other*

*grounds by Savoca v. United States*, No. 20-1502, 2022 WL 17256392 (2d Cir. Nov. 29, 2022)

(summary order). First, the second or successive motion "must be certified" by the Court of

Appeals, and that certification must occur "as provided in section 2244," 28 U.S.C. § 2255(h),

which, as relevant here, requires the defendant to show that the claim relies on a new rule of

constitutional law, *id.* § 2244(b)(2)(A).  The Court of Appeals may authorize the filing of a second or successive Section 2255 motion "only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C); *see also Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002) (Section 2244 standard governs second or successive Section 2255 motions).

Because the Court of Appeals' grant of permission to file a second or successive Section 2255 motion is based on a mere "prima facie showing," 28 U.S.C. § 2244(b)(3)(C), the determination that the threshold requirements have been met is "preliminary," *Savoca*, 21 F.4th at 230, and is "not a finding that [the defendant] actually satisfied those requirements," *Massey v. United States*, 895 F.3d 248, 251 (2d Cir. 2018).  Under AEDPA, a district court "shall dismiss any claim" in a second or successive Section 2255 motion authorized by the Court of Appeals "unless the applicant shows that the claim satisfies the requirements of this section."  28 U.S.C. § 2244(b)(4).  Thus, a district court "must . . . independently consider" the threshold requirements for second or successive Section 2255 motions.  *Savoca*, 21 F.4th at 230.  The district court "must engage in a searching inquiry, pursuant to which it '*shall* dismiss any claim presented in a second or successive application . . . unless the applicant *shows* that the claim satisfies [AEDPA's] requirements.'" *Id.* (quoting 28 U.S.C. § 2244(b)(4)) (emphases in original); *see also Tyler v. Cain*, 533 U.S. 656, 660-61 & n.3 (2001) (explaining that Section 2244(b)(4) "requires a district court to dismiss a claim in a second or successive application" unless the applicant shows that the requirements of Section 2244(b)(2)(A) are met).

It is well established that the defendant bears the burden to demonstrate entitlement to relief in a Section 2255 proceeding.  *E.g.*, *Galviz Zapata v. United States*, 431 F.3d 395, 399 (2d Cir.

2005); *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995); *Polizzi v. United States*, 926 F.2d 1311, 1321 (2d Cir. 1991). Furthermore, AEDPA expressly assigns to defendants the burden to satisfy the gatekeeping requirements for successive Section 2255 motions. 28 U.S.C. § 2244(b)(2)(A) (a claim in a successive Section 2255 motion "shall be dismissed unless," as relevant here, "*the applicant shows* that the claim relies on a new rule of constitutional law" (emphasis added)); *id.* § 2244(b)(4) (district court "shall dismiss any claim" in a successive Section 2255 motion authorized by the court of appeals "unless *the applicant shows* that the claim satisfies the requirements of this section" (emphasis added)).

### 2.   The *Davis* and *Taylor* Decisions

Section 924(c) prohibits using or carrying a firearm during and in relation to "any crime of violence" or "drug trafficking crime." 18 U.S.C. § 924(c).  Section 924(c) provides two definitions for a "crime of violence."  First, under the elements clause, a crime of violence is a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924 (c)(3)(A).  Second, under the residual clause, a crime of violence is a crime that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924 (c)(3)(B).  The Supreme Court invalidated the residual clause as unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319 (2019).

After *Davis*, the Second Circuit held that conspiracy to commit Hobbs Act robbery, which the Circuit had previously determined was a crime of violence pursuant to the residual clause, did not qualify as a Section 924(c) crime of violence. *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019). The Supreme Court subsequently held that attempted Hobbs Act robbery is not a crime of

violence pursuant to the elements clause because it does not have as an element the use, attempted use, or threatened use of physical force. *United States v. Taylor*, 142 S. Ct. 2015, 2020-2021 (2022).

### B. Parkes's Section 924(c) Claim Does Not Satisfy AEDPA's Gatekeeping Requirements

Parkes's challenge to his Section 924(c) conviction must be dismissed because he has failed to show that his claim, which is raised in a successive Section 2255 motion, relies on a new rule of constitutional law.

### 1. *Taylor* Is a Statutory Decision and Not a New Rule of Constitution Law; *Davis* Is a New Rule of Constitution Law, But Parkes Must Show that He Was Sentenced Under the Residual Clause

The Government agrees that *Taylor* applies retroactively on collateral review, and thus a *Taylor* claim may be brought in a first Section 2255 motion.  However, Parkes's invocation of *Taylor* does not satisfy the gatekeeping requirement for a successive Section 2255 motion because it is a statutory decision rather than a new rule of constitutional law.  *Taylor* addresses a simple question: "Does attempted Hobbs Act robbery qualify as a 'crime of violence' under 18 U.S.C. § 924(c)(3)(A)?" 142 S. Ct. at 2018.  Answering that question required "interpreting the reach of § 924(c)(3)(A)," *id.* at 2024, a quintessentially statutory question.  In answering the question, the Supreme Court closely examined the text of two statutory provisions: the elements clause of the definition of "crime of violence" under Section 924(c) and the definition of robbery under the Hobbs Act. *Id.* at 2020 (quoting 18 U.S.C. §§ 924(c)(3)(A) and 1951(b)).  Echoing the language of the elements clause, the Supreme Court concluded that "no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force." *Id.* at 2021. The Supreme Court rejected the Government's "competing interpretation" of the elements

clause because it was countered by other "textual clues," "would vastly expand the statute's reach," and would "defy" two of the Supreme Court's "usual rules of statutory interpretation." *Id.* at 2023-24. Thus, the Supreme Court engaged in statutory, not constitutional, interpretation. Any possible doubt on this score is eliminated by the Supreme Court's recognition that Congress could "easily" rewrite the elements clause "to do the kind of work the government supposes." *Id.* at 2022.

Thus, *Taylor* does not constitute "a new rule of constitutional law" under Section 2255(h)(2) and Section 2244(b)(2)(A). *See Savoca v. United States*, No. 20-1502-PR, 2022 WL 17256392, at *2 (2d Cir. Nov. 29, 2022) (summary order) (noting defendant conceded that *Taylor* is a statutory decision); s*ee also Massey*, 895 F.3d at 252 (decision that "interpreted the ACCA's force clause" was not a new rule of constitutional law); *Washington v. United States*, 868 F.3d 64, 66 (2d Cir. 2017) (decision that "was interpreting ACCA, not the Constitution," was not a new rule of constitutional law). Accordingly, a claim based on *Taylor* does not satisfy AEDPA's gatekeeping requirements.

Unlike *Taylor*, *Davis* is a new rule of constitutional law that has been made retroactive to cases on collateral review. *See Hall v. United States*, --- F.4th ---, 2023 WL 307429, at *5 & n.3 (2d Cir. Jan. 19, 2023) (holding in the context of a first Section 2255 motion that *Davis* applies retroactively on collateral review, and observing that other circuits have held that *Davis* is a new rule of constitutional law made retroactive to cases on collateral review for purposes of a successive Section 2255 motion). But it is not enough for Parkes simply to invoke *Davis* in support of his claim. To the contrary, the Second Circuit has instructed that a claim like Parkes's "relies on a new rule of constitutional law only if he was sentenced in violation of that new constitutional rule." *Massey*, 895 F.3d at 252. The operative question is "whether [Parkes] was sentenced in

15

violation of the new constitutional rule announced in [*Davis*], which held that [Section 924(c)'s] residual clause was unconstitutionally vague." *Id.*; *see also Savoca*, 2022 WL 17256392, at *3 (district court's determination of "which of the two clauses was the basis for [defendant's] sentence . . . will answer the question whether [the successive] habeas petition relies on a new rule of constitutional law"). Parkes has not made that showing here. The record and the background legal conditions show that one predicate of Parkes's Section 924(c) conviction, attempted Hobbs Act robbery, was a crime of violence pursuant to the elements clause. To be sure, the other predicate, Hobbs Act robbery conspiracy, was a crime of violence pursuant to the residual clause. But Parkes was convicted of both underlying offenses, and there is no reason to believe it more likely that the Section 924(c) conviction was based on the robbery conspiracy predicate rather than the attempted robbery predicate. Thus, Parkes has failed to show that "he was sentenced in violation of th[e] new constitutional rule" of *Davis*, *i.e.*, pursuant to Section 924(c)'s residual clause. *Massey*, 895 F.3d at 252. Accordingly, Parkes has failed to show that his claim relies on a new rule of constitutional law.

### 2. Parkes's Section 924(c) Conviction Was Predicated in Part on the Elements Clause

> *a. Based on the Record, Parkes's Section 924(c) Conviction Was Predicated in Part on the Elements Clause*

To determine whether Parkes's claim is based on *Taylor's* statutory ruling or *Davis'* new rule of constitutional law, the Court must "engage in a searching inquiry" to determine whether, as "a question of historical fact," Parkes's conviction was based on the elements clause or the residual clause of Section 924(c). *Savoca v. United States*, 2022 WL 17256392, at *2; *see also Walker v. United States*, 900 F.3d 1012, 1015 (8th Cir. 2018) ("Whether the residual clause

provided the basis for an ACCA enhancement is a factual question for the district court."). Parkes's claim is based in part on *Taylor* because the record shows that one of the predicates of Parkes's Section 924(c) conviction, attempted Hobbs Act robbery, was, in fact, treated as a crime of violence based on the elements clause of Section 924(c).  A broad review of the record that incorporates the jury charge for the definition of "robbery" and, in turn, Count Two, shows that attempted Hobbs Act robbery was a crime of violence based on the elements clause.

As described above, when the Court instructed the jury on the definition of "robbery" that had to be applied to Count Two, attempted Hobbs Act robbery, the Court explained that:

> The definition of robbery requires that the taking of property be against the victim's will by actual or threatened force, violence or fear of injury, whether immediate or in the future.

(Tr. 477-478.)  Thus, attempted Hobbs Act robbery, as defined by the Court for the jury, explicitly required use of actual or threatened force as an element of the offense. The Court reiterated that actual or threatened force was a necessary element, stating:

> A robbery does not require that force, violence and fear were all used or all threatened.  A robbery has occurred, assuming all the other elements are met, if the alleged robbers used any of these methods to take property.

(Tr. 478.)  The Court further described what qualified as actual or threatened use of force to satisfy the reference to "robbery" in Count Two, explaining that, in determining whether the defendant obtained property through the use or threat of fear, the jury could consider circumstantial evidence, including the situation and actions of people involved. (Tr. 479.)  The Court also described that, in determining whether the defendant threatened force to obtain property, the jury should consider whether a reasonable person would have been fearful in the circumstances.  (Tr. 478-479.)

17

Under the elements clause, a crime of violence is a crime that has "as an element the use, attempted use, or threatened us of physical force against the person or property of anther." 18 U.S.C. § 924(c)(3)(A). The fact that the Court defined attempted Hobbs Act robbery by including the use or threatened use of force through its definition of "robbery" shows that attempted Hobbs Act robbery was, in fact, a crime of violence under Section 924(c)'s elements clause.  The Court did not define "robbery" or attempted Hobbs Act robbery as involving a substantial risk of the use of physical force, which would have been consistent with the residual clause.  Instead, the Court defined attempted Hobbs Act robbery to require actual or threatened force, consistent with the elements clause. Thus, although in defining Count Three regarding the Section 924(c) offense, the Court instructed the jury that attempted Hobbs Act robbery was a crime of violence without specifying whether it was a crime of violence pursuant to the elements or residual clause, it is clear based on the Court's definition of attempted Hobbs Act robbery that it was, in fact, a crime of violence pursuant to the elements clause.  Moreover, no party objected that conspiracy to commit Hobbs Act robbery or attempted Hobbs Act robbery were crimes of violence for the purposes of Count Three.  (Tr. 503.)

In sum, the jury charge shows that the Court—and the parties—understood that actual or threatened use of force was an element of attempted Hobbs Act robbery.  Attempted Hobbs Act robbery was therefore a crime of violence pursuant to the elements clause.  Because the Court instructed the jury accordingly, and because Parkes was convicted of the attempted Hobbs Act

robbery count, Parkes's Section 924(c) conviction was, in fact, based in part on the elements clause.

> ### b. Based on Background Legal Conditions, Parkes's Section 924(c) Conviction Was Predicated in Part on the Elements Clause

Moreover, background legal conditions confirm that Parkes's Section 924(c) conviction was based in part on the elements clause. "Background legal conditions are . . . a factor that district courts may appropriately consider when determining the . . . grounds on which an original sentencing court relied." *Savoca*, 21 F.4th at 235. If "the sentencing record is unclear as to the clause on which an original sentencing court had, in fact, relied," then the court "should consider the likelihood that applying a given clause would have been legal error at the time of sentencing, and should not assume sentencing courts would have chosen a legally erroneous clause over a legally permissible one." *Id.*

Here, the law at the time of Parkes's trial and sentencing establishes that attempted Hobbs Act robbery was considered a crime of violence under Section 924(c)'s elements clause. Years before Parkes's trial, the Second Circuit had held that attempted robbery was a crime of violence under identical and similarly worded elements clauses. *United States v. Galicia-Delgado*, 130 F.3d 518, 520 (2d Cir. 1997) (New York attempted robbery in the first degree constitutes a crime of violence under the elements clause of 18 U.S.C. § 16(a)); *United States v. Brown*, 52 F.3d 415, 425-26 (2d Cir. 1995) (New York attempted robbery in the third degree constitutes a violent felony under ACCA's elements clause). While these decisions addressed robbery under New York law rather than the Hobbs Act, they relied on the fact that New York robbery has as an element that the defendant "uses or threatens the immediate use of physical force upon another person," N.Y.

Penal Law § 160.00, and Hobbs Act robbery has a comparable element. *See* 18 U.S.C. § 1951(b).[2] Indeed, in one decision, the Second Circuit expressly analogized to Hobbs Act robbery in support of its conclusion that New York attempted robbery is a violent felony under ACCA's elements clause. *Brown*, 52 F.3d at 426.

Thus, the law at the time of Parkes's conviction and sentencing establishes that attempted Hobbs Act robbery was considered a crime of violence under Section 924(c)'s elements clause. Moreover, Parkes offers no contrary authority suggesting that attempted robbery would have instead been treated as a crime of violence under Section 924(c)'s residual clause.

### 3. Parkes Has Failed to Establish That It Is More Likely Than Not That His Section 924(c) Conviction Was Predicated on the Residual Clause

As discussed above, the attempted Hobbs Act robbery predicate of Parkes's Section 924(c) conviction was a crime of violence pursuant to the elements clause. The Government acknowledges that the other predicate, Hobbs Act robbery conspiracy, was a crime of violence pursuant to the residual clause. *See, e.g.*, *United States v. Barrett*, 903 F.3d 166, 175 (2d Cir. 2018) (discussing Second Circuit case law predating Parkes's case holding that conspiracy offenses qualified as crimes of violence pursuant to the residual clause), *vacated by* 139 S. Ct. 2774 (2019). Parkes was convicted in Counts One and Two of both the robbery conspiracy and the attempted

---

[2] Congress modeled the Hobbs Act on New York Penal Law and the Field Code, a 19th-century model penal code. *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 (2003). New York's robbery statute, in turn, is modeled on the common law definition of robbery. *United States v. Thrower*, 914 F.3d 770, 775 (2d Cir. 2019). Thus, Hobbs Act robbery "is common law robbery, and robbery as defined by the New York Penal Laws." *United States v. Nedley*, 255 F.2d 350, 357 (3d Cir. 1958). As the Second Circuit has stated, "the common law crime of robbery and the various federal statutory offenses of robbery have substantially the same essential elements." *United States v. Walker*, 595 F.3d 441, 444 (2d Cir. 2010).

robbery, and he offers no reason to believe that the Section 924(c) conviction was more likely based on the robbery conspiracy predicate than the attempted robbery predicate.  Thus, Parkes has shown at most that his Section 924(c) conviction might have been based on the residual clause, rather than that the residual clause actually "was the basis for [his] sentence." *Savoca*, 2022 WL 17256392, at *3.

The Second Circuit has yet to address the defendant's "burden of proof where the sentencing record is 'unclear' as to which . . . clause an original sentencing court relied on." *Savoca*, 21 F.4th at 234 n.7; *see also Savoca*, 2022 WL 17256392, at *3 ("If the district court determines that the record is inconclusive [as to which clause was the basis for defendant's sentence], then it may confront the question whether a habeas motion relies on a new rule of constitutional law when the record does not reveal the basis of the sentence."); *Massey*, 895 F.3d at 253 n.10 (explaining that "our holding in this case does not reach those situations" in which "it was unclear from the sentencing record whether the movant was sentenced under the residual clause" or a different clause).  But the majority of circuits to address the issue have held that a defendant claiming that he was sentenced under an unconstitutional residual clause "must show that it is more likely than not 'that the district court relied only on the residual clause in sentencing' him."  *Williams v. United States*, 927 F.3d 427, 439 (6th Cir. 2019) (quoting *Potter v. United States*, 887 F.3d 785, 788 (6th Cir. 2018)); *see also United States v. Clay*, 921 F.3d 550, 559 (5th Cir. 2019) ("a prisoner seeking the district court's authorization to file a successive § 2255 petition raising a *Johnson* claim must show that it was more likely than not that he was sentenced under the residual clause"); *Walker*, 900 F.3d at 1015 (defendant must "show by a preponderance of the evidence that the residual clause led the sentencing court to apply the . . . enhancement"); *United*

21

*States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018) ("the burden is on the defendant to show by a preponderance of the evidence—*i.e.*, that it is more likely than not—his claim relies on *Johnson*"); *Dimott v. United States*, 881 F.3d 232, 243 (1st Cir. 2018) (defendant "bears the burden of establishing that it is more likely than not that he was sentenced solely pursuant to [the] residual clause"); *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017)("movant must show that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of his sentence").[3]

This rule is faithful to AEDPA's text, which expressly assigns to defendants the burden to satisfy the gatekeeping requirements for successive Section 2255 motions. 28 U.S.C. §2244(b)(2)(A)&(b)(4) (mandating dismissal unless "*the applicant shows* that the claim relies on a new rule of constitutional law" and "*the applicant shows* that the claim satisfies the requirements of this section" (emphasis added)). It also comports with AEDPA's purposes and the strong interests in finality. *Dimott*, 881 F.3d at 240-41; *Clay*, 921 F.3d at 559. After the completion of direct review in a criminal case "a presumption of finality and legality attaches to the conviction and sentence," *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993), and courts are "entitled to presume" that the defendant's sentence is lawful, *United States v. Frady*, 456 U.S. 152, 164 (1982). "[T]hat presumption is irreparably undermined if the Government is forced to bear the burden of proving that each . . . claimant does *not* have a valid [constitutional] claim." *Dimott*, 881 F.3d at

---

[3] In concluding that a defendant need only show that his sentence "may have been predicated on application of the now-void residual clause," the Fourth and Ninth Circuits relied on dicta from an Eleventh Circuit decision, *In re Chance*, 831 F.3d 1335 (11th Cir. 2016). *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017); *United States v. Geozos*, 870 F.3d 890, 894 n.4, 896 & n.6 (9th Cir. 2017).The Eleventh Circuit has since rejected that dicta. *Beeman*, 871 F.3d at1228 n.3.

241. The rule also promotes uniformity by holding defendants asserting residual-clause claims to the same burden as defendants asserting other constitutional claims. *Walker*, 900 F.3d at 1015 ("What would be arbitrary is to treat *Johnson* claimants differently than all other §2255 movants claiming a constitutional violation."(quoting *Beeman*, 871 F.3d at 1224)); *see supra* at 12-13 (Second Circuit law recognizing general rule that defendants bear burden on Section 2255 motions). And it avoids the "strange incentives" that would be created by the minority rule, which would bar relief for a defendant who invited the creation of a record by lodging an objection in the district court, while allowing a collateral attack by a defendant who made no such objection. *Potter v. United States*, 887 F.3d 785, 788 (6th Cir. 2018).

Parkes must demonstrate that it is more likely than not that his Section 924(c) conviction was based on the residual cause, but he points to nothing in the record suggesting that was so. Parkes cannot bootstrap his statutory claim to *Davis'* new rule of constitutional law to satisfy AEDPA's gatekeeping requirements. *See Massey*, 895 F.3d at 253; *Dimott*, 881 F.3d at 237-38. Parkes also cannot "show[ ] that [his] claim relies on a new rule of constitutional law," 28 U.S.C. § 2244(b)(2)(A), by merely pointing to *uncertainty* in the record. To conclude otherwise would invert the well-established burden of establishing entitlement to the "extraordinary remedy" of habeas relief. *Bousley v. United States*, 523 U.S. 614, 621 (1998).

### 4. Neither *Taylor* nor Other Out-of-District Cases Alters the Gatekeeping Analysis for Parkes's Claim

Parkes points to *Taylor*, *Francies v. United States*, 2022 WL 2763385 (7th Cir. July 15, 2022), and other out-of-district cases to argue that his claim is not barred by AEDPA's gatekeeping requirements. Def. Br. at 3-6. First, Parkes argues that his Section 924(c) claim relies on *Davis's*

new rule of constitutional law because the defendant in *Taylor* likewise invoked *Davis* in his successive Section 2255 motion. Def. Br. at 5. *Taylor* does not help Parkes because *Taylor* does not say anything about the gatekeeping requirements for successive Section 2255 motions. *Taylor* reached the Supreme Court on a petition for certiorari by the Government that specifically sought resolution of a circuit split on the merits question of whether attempted Hobbs Act robbery qualifies as a crime of violence under Section 924(c)(3)(A). In seeking expeditious resolution of that emerging circuit conflict, the Government never conceded that the defendant's claim satisfied the gatekeeping requirements for successive Section 2255 motions. And the Supreme Court's decision addresses the merits question alone, without any discussion of the gatekeeping requirements. This Court should reject the implication of Parkes's argument that the Supreme Court altered *sub silentio* the gatekeeping requirements for successive Section 2255 motions, an issue on which the Court did not grant certiorari—and that it did so without any briefing or argument by the parties.

Parkes further points to *Francies* and other out-of-district cases to argue that his Section 924(c) claim is cognizable in a second Section 2255 motion. Def. Br. at 3. *Francies* involved successive Section 2255 motions challenging two Section 924(c) convictions, one predicated on attempted Hobbs Act robbery and the other predicated on both attempted Hobbs Act robbery and conspiracy to violate civil rights. 2022 WL 2763385 at *1. Although the Government conceded in that case that relief was warranted, that concession appears to have been based at least in part on the Government's failure to assert the gatekeeping requirements in the district court, and the court did not address AEDPA's gatekeeping requirements. The same is true for the remaining cases that Parkes cites. *See United States v. Murry*, 11 Cr. 73 (E.D.V.A.) (not asserting

24

gatekeeping requirements of successive Section 2255 motion); *United States v. Myton*, 98 Cr. 500 (E.D.N.Y.) (Dkt. No. 568) (same); *United States v. Bernard*, 98 Cr. 500 (E.D.N.Y.) (Dkt. No. 566) (same). In any event, these concessions do not bind the Government in this case, and the Government's arguments in this brief are consistent with the Department of Justice's post-*Taylor* position.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that pursuant to 28 U.S.C. § 2244(b)(4), the Second Section 2255 Motion must be dismissed.

Dated:  New York, New York
        January 23, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York


By:  /s/ *Danielle M. Kudla*
_____
Danielle M. Kudla
Assistant United States Attorney
Tel.: 212-637-2304

25