**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
Executive Director
*and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

February 28, 2023

**By ECF**
Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:   <u>United States v. Otis Parkes</u>
           03 Cr. 1364 (LAK)

Dear Judge Kaplan:

      On behalf of Otis Parkes, I write in reply to the government's memorandum (Cr. Dkt. No. 231) ("Gov't Mem."), and in further support of Parkes's motion for 28 U.S.C. § 2255 relief from his Count 3 conviction under 18 U.S.C. § 924(c). <u>See</u> Cr. Dkt. No. 227 ("Parkes Mem.").

      The government agrees that <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), and <u>United States v. Taylor</u>, 142 S. Ct. 2015 (2022), apply retroactively and invalidate both potential crime-of-violence predicates for Count 3. Rather than concede that Parkes is therefore entitled to relief—a concession made in numerous indistinguishable cases—the government instead defends Parkes's conviction and consecutive life sentence on a single procedural ground: His claim does not satisfy the gatekeeping requirements for successive § 2255 motions. Gov't Mem. 1. That argument is barred by the law of the case doctrine, because it was raised and implicitly rejected at a prior stage of this litigation. And it is wrong on the merits, because Parkes's Count 3 claim "relies on" <u>Davis</u>. 28 U.S.C. § 2244(b)(2)(A). This Court should therefore grant this motion, vacate Parkes's Count 3 conviction and sentence, and issue an amended judgment so reflecting.

**Argument**

**I.**    **The Parties Agree On The Answers To The Questions In The Second Circuit's Mandate.**

      The Second Circuit's mandate directed this Court to "decide in the first instance [i] whether the case law underlying [Parkes's] claim may be applied retroactively to cases on collateral review and [ii] whether [Parkes's] § 924(c) conviction is still supported by any valid crime-of-violence predicate." <u>See</u> Parkes Mem. 2.

Hon. Lewis A. Kaplan  February 28, 2023
United States District Judge  Page 2

**Re:  United States v. Otis Parkes**
      **03 Cr. 1364 (LAK)**

Both Davis and Taylor apply retroactively. See Parkes Mem. 3–6. The government so concedes. Gov't Mem. 15 ("Davis is a new rule of constitutional law that has been made retroactive to cases on collateral review." (citing Hall v. United States, 58 F.4th 55, 62 & n.3 (2d Cir. 2023)); Gov't Mem. 14 ("The Government agrees that Taylor applies retroactively on collateral review."). Parkes's Count 3 § 924(c) conviction had only two potential crime-of-violence predicates—the Count 1 conspiracy to commit Hobbs Act robbery (disqualified by Davis), and the Count 2 attempted Hobbs Act robbery (disqualified by Davis and Taylor). Parkes Mem. 6. The government accepts as much. E.g., Gov't Mem. 16 (referring to "one predicate of Parkes's Section 924(c) conviction, attempted Hobbs Act robbery," and "the other predicate, Hobbs Act robbery conspiracy"). The parties therefore agree that Davis and Taylor "may be applied retroactively to cases on collateral review" and that in light of those decisions, Count 3 is no longer "supported by any valid crime-of-violence predicate."

In light of that agreement, the correct disposition of this motion should be straightforward. The motion should be granted, just like many others in identical or near-identical cases—successive § 2255 motions challenging § 924(c) convictions predicated on attempted Hobbs Act robbery alone, or attempted Hobbs Act robbery and a corresponding conspiracy. Indeed, this case is identical to Taylor itself, which affirmed the grant of a successive § 2255 motion and the vacatur of a § 924(c) conviction predicated on conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery. 142 S. Ct. at 2019, 2026, 2027 (Thomas, J., dissenting). See also, e.g., United States v. Mallett, 2023 WL 268088 (E.D. Cal. Jan. 18, 2023) (government consent to vacatur of § 924(c) convictions predicated on attempted Hobbs Act robbery); United States v. Bernard, 2023 WL 184443, at *1 (E.D.N.Y. Jan. 13, 2023) (government consent to vacatur of §§ 924(c) and 18 U.S.C. § 924(j) convictions predicated on attempted Hobbs Act robbery, in case where movant personally killed victim); Samson v. United States, 2022 WL 17660604 (11th Cir. Dec. 14, 2022) (government consent to vacatur of § 924(c) conviction predicated on attempted Hobbs Act robbery); Order, United States v. Murry, No. 16–7424 (4th Cir. Oct. 14, 2022), Dkt. No. 53–1 (government consent to vacatur of §§ 924(c)/924(j) count predicated on attempted Hobbs Act robbery); Gov't Letter at 1, 6, 8, 9, United States v. Myton, 98 Cr. 500 (FB) (E.D.N.Y. Oct. 21, 2022), Dkt. No. 568 (government consent to vacatur of § 924(c) convictions predicated on attempted Hobbs Act robbery); Jones v. United States, 2022 WL 4590582 (W.D.N.C. Sept. 29, 2022) (government consent to vacatur of § 924(c) conviction predicated on attempted Hobbs Act robbery); United States v. Jones, 2022 WL 4370439 (E.D. Va. Sept. 21, 2022) (government consent to vacatur of § 924(c) conviction predicated on attempted Hobbs Act robbery); United States v. Burwell, 2022 WL 4370441 (E.D. Va. Sept. 20, 2022) (government consent to vacatur of § 924(c) conviction predicated on attempted Hobbs Act robbery); Gov't Motion, United States v. Foote, No. 22–1090 (3d Cir. July 19, 2022), Dkt. No. 15 (government consent to vacatur of § 924(c) conviction predicated on conspiracy to commit Hobbs Act Robbery and attempted Hobbs Act robbery), granted, Order, Foote, supra (3d Cir. Aug. 25, 2022), Dkt. No. 16–1; Francies v. United States, 2022 WL 2763385 (7th Cir. July 15, 2022) (government consent to vacatur of one § 924(c) count predicated on conspiracy to violate civil rights and attempted Hobbs Act robbery, and another § 924(c) count predicated on attempted Hobbs Act robbery).

Hon. Lewis A. Kaplan  February 28, 2023
United States District Judge  Page 3

Re:   **United States v. Otis Parkes**
      03 Cr. 1364 (LAK)

**II.   The Second-Or-Successive Gatekeeping Requirements Do Not Bar Parkes's Claim.**

Notwithstanding the above, the government nonetheless opposes relief here, making a sole argument: Parkes's claim "must be dismissed" because it "does not satisfy the gatekeeping requirements for a second or successive Section 2255 motion." Gov't Mem. 11. That argument lacks merit. This Court implicitly determined that Parkes's claim met the gatekeeping requirements when it denied rather than dismissed the claim (Cr. Dkt. No. 214, at 2–3), and that determination is law of the case. Moreover, the Second Circuit's mandate does not direct this Court to address—let alone reopen—the gatekeeping issue. § II.A. On the merits, Parkes's claim "relies on" Davis, which is all that 28 U.S.C. §§ 2244(b)(2)(A) and 2244(b)(4) ask. § II.B.

A.   This Court's Implicit Determination That Parkes's Claim Satisfied The Gatekeeping Requirements Is Law Of The Case, And The Second Circuit's Remand Order Does Not Authorize Reopening That Issue.

The law of the case doctrine "forecloses relitigation of issues that were decided—or that could have been decided—during prior proceedings. It applies both to that which is expressly decided as well as to everything decided by necessary implication." Choi v. Tower Research Capital LLC, 2 F.4th 10, 21 (2d Cir. 2021). See Aramony v. United Way of Am., 254 F.3d 403, 410 (2d Cir. 2001) ("Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication."). The doctrine provides that "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). While law of the case "does not rigidly bind" courts, courts "generally adhere to prior decisions in subsequent stages of the same case" absent "cogent and compelling reasons" to do otherwise—for example, "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Choi, 2 F.4th at 21.

Here, this Court decided by necessary implication that Parkes's challenge to Count 3 met the gatekeeping requirements when it denied that claim on the merits rather than dismissing it pursuant to 28 U.S.C. § 2244(b)(4). As the government recounts, following Davis, the Second Circuit authorized Parkes to file a successive § 2255 motion challenging Counts 3 and 4. Gov't Mem. 9. Before this Court, the government argued that Parkes's Count 3 claim failed to meet the successive gatekeeping requirements and thus had to be dismissed. Cr. Dkt. No. 204, at 22 n.9 (citing § 2244(b)(4)). See Gov't Mem. 9 ("[T]he Government ... opposed vacating Parkes's conviction on Count Three on the following bas[i]s: ... Parkes failed to satisfy the gatekeeping requirements of Section 2244(b) for a successive filing.").

If this Court had agreed with the government's argument, then § 2244(b)(4)'s mandatory language would have compelled dismissal of Parkes's Count 3 claim. See Gov't Mem. 12 ("Under AEDPA, a district court 'shall dismiss any claim' in a second or successive Section 2255 motion authorized by the Court of Appeals 'unless the applicant shows that the claim satisfies the requirements of this section.'" (quoting § 2244(b)(4)). But this Court did not dismiss Parkes's Count 3 claim. Instead, this Court denied the claim on the merits: "Parkes's motion to

Hon. Lewis A. Kaplan                                                                                February 28, 2023
United States District Judge                                                                                      Page 4

**Re:    United States v. Otis Parkes**
         03 Cr. 1364 (LAK)

vacate his conviction on Count Three is denied." Cr. Dkt. No. 214, at 2. Specifically, this Court reasoned that attempted Hobbs Act robbery was an 18 U.S.C. § 924(c)(3)(A) crime of violence under United States v. McCoy, 995 F.3d 32 (2d Cir. 2021), vacated sub nom. McCoy v. United States, 142 S. Ct. 2863 (2022), and that this valid predicate sufficed to sustain the conviction. Cr. Dkt. No. 214, at 2. That is, presented with the government's procedural argument that Parkes's Count 3 claim "failed to meet the successive gatekeeping requirements and thus had to be dismissed" pursuant to § 2244(b)(4), this Court instead denied the claim on the merits, necessarily resolving this procedural argument against the government. That ruling is law of the case, and the government offers no cogent or compelling reasons to reconsider it.

Moreover, on Parkes's appeal, the government did not assert § 2244(b)(4) as an alternative ground for denying relief. The mandate rule—"a specific application of the law of the case doctrine"—"prohibit[s] [a] district court from reopening [an] issue" that could have been, but was not, raised on appeal. United States v. Stanley, 54 F.3d 103, 107 (2d Cir. 1995). See also, e.g., United States v. Zvi, 242 F.3d 89, 95 (2d Cir. 2001) ("[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so."). True, in consenting to vacatur and remand before the Second Circuit, the government purported to reserve its right to address the gatekeeping requirements on remand. See Gov't Mem. 10. Given that reservation, however, the Circuit's mandate cuts against the government's position here. The Circuit did not acknowledge the government's position or direct this Court to consider the successive gatekeeping requirements anew, as it often does. Cf., e.g., Savoca v. United States, 21 F.4th 225, 228–29 (2d Cir. 2021); Massey v. United States, 895 F.3d 248, 250 (2d Cir. 2018) (both noting that Circuit orders in successive § 2255 cases had directed district courts to address gatekeeping requirements). Instead, the Circuit's mandate gave this Court two other tasks. "Where a mandate limits the issues open for consideration on remand, a district court ordinarily cannot consider additional issues." Puricelli v. Argentina, 797 F.3d 213, 218 (2d Cir. 2015).

The implication of the mandate is plain: Confronted with a merits denial of § 2255 relief (then correct under McCoy, now erroneous under Taylor), the Second Circuit vacated the denial of relief and remanded for this Court to address two specific issues that might nonetheless preclude vacatur of the Count 3 conviction—nonretroactivity, and the possible existence of an alternative predicate. The Circuit did not direct this Court to revisit its implicit resolution of the gatekeeping requirements, even though the government flagged this point. Considering both "the specific dictates of the remand order" as well as "the broader 'spirit of the mandate,'" Zvi, 242 F.3d at 95, this Court should reject the government's effort to relitigate the § 2244 question.

B.      On The Merits, Parkes Has Shown That His Claim "Relies On" Davis.

If this Court reaches the merits, this Court should reject the government's argument Parkes "has failed to show that his claim, which is raised in a successive Section 2255 motion, relies on a new rule of constitutional law." Gov't Mem. 14. As a matter of plain text, Parkes's claim "relies on" Davis because Davis is necessary to the success of his claim. § II.B.1. As for

Hon. Lewis A. Kaplan  February 28, 2023
United States District Judge  Page 5

**Re:   United States v. Otis Parkes**
       03 Cr. 1364 (LAK)

the historical question of which clause—elements or residual—formed the basis for Parkes's Count 3 conviction, it suffices for Parkes to show that his conviction may have rested on 18 U.S.C. § 924(c)(3)(B)'s residual clause, and the government concedes that he has at least met that burden. § II.B.2. In the alternative, if this Court applies a higher burden of proof, Parkes can still show that Count 3 more likely than not rested on the residual clause. § II.B.3.

1. Parkes acknowledges that his Count 3 challenge implicates Taylor, a statutory decision. See Gov't Mem. 14–16. However, his Count 3 challenge nonetheless "relies on" Davis, a new rule of constitutional law made retroactive by the Supreme Court. Under the plain meaning of the statutory text, a claim "relies on" a rule, for purposes of §§ 2244(b)(2)(A) and 2244(b)(4), when the rule is necessary to the success of the claim.[1]

Sections 2244(b)(2)(A) and 2244(b)(4) require that a successive § 2255 motion "rel[y] on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." The government concedes that Davis ranks as such a rule. Gov't Mem. 15; see Hall, 58 F.4th at 62 & n.3. Parkes's motion "relies on" Davis. Section 2244 does not define "relies on," so the phrase "should be given its common, ordinary meaning." Harris v. Sullivan, 968 F.2d 263, 265 (2d Cir. 1992) (citing Perrin v. United States, 444 U.S. 37, 42 (1979)). To "rely" on means "to be dependent" on, as "rock climbers" "rely[] on" rope to keep from falling, or "local governments" "rely on" land sales for revenue. Rely, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/rely. Fit to this context, a claim "relies on" a rule when it "depends on" that rule to make out a case for relief; that is, when the rule is necessary to the claim's success. Put differently, a movant's "claim relies on a new rule of constitutional law only if he was sentenced in violation of that new constitutional rule." Massey, 895 F.3d at 252.

Parkes meets that test. His Count 3 challenge "depends on" Davis, because only Davis allows him to argue that Count 3 lacks a valid crime-of-violence predicate. Prior to Davis, the Second Circuit had held that conspiracy to commit Hobbs Act robbery was a crime of violence under 18 U.S.C. § 924(c)(3)(B)'s residual clause. United States v. Elder, 88 F.3d 127, 129 (2d Cir. 1996) ("[A] Hobbs Act conspiracy to commit robbery is by definition a conspiracy that involves a substantial risk that physical force may be used against the person or property of another."); see also United States v. Barrett, 903 F.3d 166, 175 (2d Cir. 2018) (citing Elder, reaffirming that conspiracy to commit Hobbs Act robbery is § 924(c)(3)(B) crime of violence), vacated sub nom. Barrett v. United States, 139 S. Ct. 2774 (2019). Under Elder, Parkes's Count

---

[1] Parkes disputes that § 2244(b)(2)(A) applies. That provision applies to a "habeas corpus application under section 2254." Parkes is proceeding under § 2255. See, e.g., Jones v. United States, 36 F.4th 974, 981–84 (9th Cir. 2022) (noting the circuit split over the extent to which § 2244(b) applies to successive § 2255 motions and holding that § 2244(b)(1) does not so apply). That said, because the Second Circuit has treated § 2244(b)(2)(A)'s substantive standard as applicable to successive § 2255 motions, e.g., Massey, 895 F.3d at 251 (2d Cir. 2018); Savoca, 21 F.4th at 230, Parkes addresses that standard.

Hon. Lewis A. Kaplan  February 28, 2023
United States District Judge  Page 6

**Re:    United States v. Otis Parkes**
         03 Cr. 1364 (LAK)

1 conspiracy to commit Hobbs Act robbery qualified as a residual-clause crime of violence for purposes of Count 3. And because the Count 1 conspiracy counted under the residual clause, so too, a fortiori, did the Count 2 attempt. The conspiracy required proof only that Parkes knowingly and willfully joined an unlawful agreement to rob. Tr. 482. The attempt required proof of that same intent, plus a substantial step toward committing the robbery. Tr. 496. Thus, not until Davis struck § 924(c)(3)(B)'s residual clause did Parkes's present claim accrue. Otherwise said, Parkes was sentenced on Count 3 "in violation of" Davis, see Massey, 895 F.3d at 252, because both of his predicate offenses counted as crimes of violence under the § 924(c)(3)(B) residual clause held unconstitutional in Davis.

True, Parkes's Count 3 challenge also relies on Taylor to establish that the Count 2 attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A)'s elements clause. But that does not mean that his claim fails to rely on Davis, which remains necessary to his case for relief. Section 2244(b)(2)(A) requires a successive motion to "rel[y] on" a new rule of constitutional law, not to "rel[y] only on" or "rely exclusively on" that rule. A rock climber may "rely on" a rope to keep from falling, but if she also relies on climbing shoes, a harness, and a partner, that does not mean that she has ceased to "rely on" the rope. "Reliance on one thing does not foreclose reliance on another, even regarding the same objective. A person relies on his car to get to work, but he might also rely on other methods at times (e.g., bus, train). And even when he relies on his car, he also (whether explicitly or implicitly) relies—i.e., is dependent upon—any number of other necessary but not sufficient conditions: that the roads are passable, that his GPS is accurate, etc." United States v. Winston, 207 F. Supp. 3d 669, 673–74 (W.D. Va. 2016). Nothing in § 2244(b)(2)(A)'s text or the plain meaning of the phrase "relies on" connotes exclusive reliance, Congress chose not to use such a limiting adverb, and "it is not the role of courts to engraft restrictive language onto statutes." United States v. Dawkins, 999 F.3d 767, 776 (2d Cir. 2021).

The government's own litigation position further confirms that a successive § 2255 movant "relies on" Davis where, as here, he deploys Davis to contest the conspiracy predicate for a multiple-predicate § 924(c) conviction. In Savoca, the government argued that the movant could not challenge, via successive § 2255 motion, a § 924(c) count based on attempted Hobbs Act robbery alone. Distinguishing Taylor, where the successive § 2255 movant prevailed, the government said:

> Taylor is distinguishable because the defendant's [§] 924(c) conviction in that case was predicated on both Hobbs Act robbery conspiracy and attempted Hobbs Act robbery. 142 S. Ct. at 2019. Because robbery conspiracy can qualify as a crime of violence only under the now-defunct residual clause of [§] 924(c)(3)(B), see United States v. Barrett, 937 F.3d 126, 128 (2d Cir. 2019), the defendant in Taylor could argue that his [§] 924(c) claim depended in part on Davis. Here, however, Savoca's [§] 924(c) conviction had only one predicate: attempted Hobbs Act robbery.

Gov't Resp. to Petition for Rehearing 14–15, Savoca v. United States, No. 20–1502 (2d Cir.

Re:   **United States v. Otis Parkes**
      **03 Cr. 1364 (LAK)**

Sept. 13, 2022), Dkt. No. 103. Just like Taylor, Parkes can (and does) "argue that his [§] 924(c) claim depend[s] in part on Davis."

2.      Without acknowledging its litigation position in Savoca, the government advances a different framework, arguing that to satisfy §§ 2244(b)(2)(A) and 2244(b)(4), Parkes "must show that his sentence was based on the residual clause." Gov't Mem. 1. As the government recognizes, the Second Circuit "has yet to address the defendant's 'burden of proof where the sentencing record is 'unclear' as to which ... clause'"—§ 924(c)(3)(A)'s elements clause or § 924(c)(3)(B)'s residual clause—"'an original sentencing court relied on.'" Gov't Mem. 21 (quoting Savoca, 21 F.4th at 234 n.7); see also Savoca v. United States, 2022 WL 17256392, at *3 & n.1 (2d Cir. Nov. 29, 2022) (summary order) (noting Circuit split on question "whether a habeas motion relies on a new rule of constitutional law when the record does not reveal the basis of the sentence"). The government urges this Court to adopt the prosecution-friendly side of the split and require Parkes to "demonstrate that it is more likely than not that his Section 924(c) conviction was based on the residual clause." Gov't Mem. 23.

The government is wrong. Assuming that it is necessary for a habeas court to decide, as a historical matter, which clause supported a movant's § 924(c) conviction—see Savoca, 21 F.4th at 231–33; Massey, 895 F.3d at 251–52 (conducting this inquiry in ACCA context); Savoca, 2022 WL 17256392, at *2–3 (remanding for district court to conduct this inquiry in § 924(c) context)—a successive § 2255 movant need only show that his § 924(c) conviction may have been based on § 924(c)(3)(B)'s invalid residual clause. If that standard governs, then Parkes must prevail: Even the government concedes that "Parkes has shown that ... that his Section 924(c) conviction might have been based on the residual clause." Gov't Mem. 21.

Three Circuits hold that a prisoner may proceed with a successive § 2255 motion if the conviction or sentence "may have" rested on an unconstitutional residual clause—at least where, as here, there is no other statutory basis to support the conviction or sentence. United States v. Peppers, 899 F.3d 211, 221 (3d Cir. 2018) ("In our view, § 2255(h) only requires a petitioner to show that his sentence may be unconstitutional in light of a new rule of constitutional law made retroactive by the Supreme Court. Peppers met that standard by demonstrating that he may have been sentenced under the residual clause of the ACCA, which was rendered unconstitutional in [Johnson v. United States, 576 U.S. 591 (2015)]"); United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017) ("We therefore hold that when an inmate's sentence may have been predicated on application of the now-void residual clause and, therefore, may be an unlawful sentence under the holding in [Johnson], the inmate has shown that he "relies on" a new rule of constitutional law within the meaning of ... § 2244(b)(2)(A)."), abrogated on other grounds by Stokeling v. United States, 139 S. Ct. 544 (2019); United States v. Geozos, 870 F.3d 890, 896 (9th Cir. 2017) ("We therefore hold that, when it is unclear whether a sentencing court relied on the residual clause in finding that a defendant qualified as an armed career criminal, but it may have, the defendant's § 2255 claim 'relies on' the constitutional rule announced in [Johnson]."), abrogated

Hon. Lewis A. Kaplan  February 28, 2023
United States District Judge  Page 8

Re:   **United States v. Otis Parkes**
       03 Cr. 1364 (LAK)

on other grounds by Stokeling.[2]

Although the Second Circuit has not resolved the question, it has cited the defendant-favorable side of the split with approval. Massey, 895 F.3d at 252–53 (citing Geozos); Belk v. United States, 743 F. App'x 481, 482 n.4 (2d Cir. 2018) ("[B]ecause it is unclear from the record whether Belk's sentence was enhanced pursuant to the ACCA's residual clause, it appears that his claim does rely on the new rule of constitutional law announced in Johnson ... , such that we may proceed to the merits of his claim." (citing Geozos)). And "the vast majority of the district courts that have considered the issue" in this Circuit have also adopted the "may have relied" test. Thrower v. United States, 234 F. Supp. 3d 372, 377 (E.D.N.Y. 2017) (collecting cases), rev'd on other grounds and remanded, 914 F.3d 770 (2d Cir. 2019). See, e.g., United States v. Lloyd, 2020 WL 4750241, at *6–7 (E.D.N.Y. Aug. 17, 2020); United States v. Lewis, 2020 WL 2797519, at *7–8 (E.D.N.Y. May 22, 2020); Buie v. United States, 2017 WL 3995597, at *3 (S.D.N.Y. Sept. 8, 2017); Belk v. United States, 2017 WL 3614446, at *2–4 (S.D.N.Y. Aug. 22, 2017); Memoli v. United States, 2017 WL 3559190, at *11 (S.D.N.Y. July 11, 2017), adopted by 2017 WL 3504918 (S.D.N.Y. Aug. 15, 2017); Diaz v. United States, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016).

The "may have relied" side of the split is correct. AEDPA contains, as relevant, two separate statutory sections. Section 2244(b)(2)(A), imposes a "prerequisite[]"—or "gateway" requirement—for bringing a second or successive motion for habeas relief. Tyler v. Cain, 533 U.S. 656, 662 (2001); Peppers, 899 F.3d at 221. Courts must "dismiss" any such motion unless "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2244(b)(2)(A); see also 28 U.S.C. § 2255(h)(2). AEDPA also contains a "merits" section. Section 2255(b) requires a prisoner to show that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."

As then-District Judge Nathan has recognized, "[c]ourts must be careful ... not to 'conflate' a requirement going to the merits of a claim with a threshold requirement for the [c]ourt to assert jurisdiction over that claim." Goldman v. Sol Goldman Invs., 559 F. Supp. 3d 238, 241 (S.D.N.Y. 2021). The courts applying the "more likely than not" test go astray on this point: They conflate AEDPA's gateway requirements with the statutory requirements for prevailing on the merits. These courts demand that the prisoner show, at the gateway stage of the

---

[2]  On the other side of the split, six Circuits hold that a movant must show that he was "more likely than not" sentenced pursuant to an invalid residual clause. Dimott v. United States, 881 F.3d 232, 243 (1st Cir. 2018); United States v. Clay, 921 F.3d 550, 558–59 (5th Cir. 2019); Potter v. United States, 887 F.3d 785, 788 (6th Cir. 2018); Walker v. United States, 900 F.3d 1012, 1015 (8th Cir. 2018); United States v. Washington, 890 F.3d 891, 896 (10th Cir. 2018); Beeman v. United States, 871 F.3d 1215, 1221–25 (11th Cir. 2017).

Re:   **United States v. Otis Parkes**
      03 Cr. 1364 (LAK)

analysis, that the trial court violated the Constitution by relying on a residual clause that is void for vagueness. See, e.g., Clay, 921 F.3d at 558–59 (holding that a court "lack[s] jurisdiction" unless the prisoner shows "that he was sentenced under the residual clause").

This reasoning muddles AEDPA's two distinct inquiries, asking in a single "merits determination" whether a court relied on the residual clause. Peppers, 899 F.3d at 223. This fusion—combining the "relies on" prong of the second-or-successive gateway, § 2244(b)(2)(A), with the prisoner's burden of proving that a constitutional violation occurred, § 2255(b)—is improper. Section 2244's "relies on" requirement has nothing to do with whether the prisoner is entitled to relief. "[I]t is a procedure for determining whether a court may hear a second-or-successive [habeas] petition on its merits." Case v. Hatch, 731 F.3d 1015, 1038 n.12 (10th Cir. 2013). And that procedure focuses the "relies on" inquiry solely on the prisoner's "claim," not on whether the claim has merit. § 2244(b)(2)(A); see Tyler, 533 U.S. at 662; In re Hoffner, 870 F.3d 301, 308 (3d Cir. 2017) ("[W]e do not address the merits at all in our gatekeeping function.").

Put another way, if a prisoner were required to show by a preponderance of the evidence at the gateway stage under § 2244(b)(2)(A) that he was sentenced in violation of the Constitution, there would be nothing left for a habeas court to do at the merits stage. This conflation of the jurisdictional and merits inquiries thus does violence to the comprehensive scheme Congress enacted in AEDPA. "[S]trict though Congress intended it to be, AEDPA surely was not meant to conflate jurisdictional inquiries with analyses of the merits of a defendant's claims." Peppers, 899 F.3d at 222; see also Winston, 850 F.3d at 682 n.4.

The "may have relied" test properly keeps the threshold gateway requirements of § 2244(b)(2)(A) distinct from the ultimate merits inquiry under § 2255. At the gateway stage, the prisoner need only demonstrate that the trial court "may have relied" on an unconstitutional residual clause. Once that showing is made, the habeas court may proceed to the merits stage to determine whether the prisoner's claim warrants relief. See Peppers, 899 F.3d at 224, 226, 236.

Policy considerations also favor the "may have relied" approach. As numerous courts have recognized, "[n]othing in the law require[d] a court to specify which clause of § 924(c)—residual or elements clause—it relied upon in imposing sentence." In re Chance, 831 F.3d 1335, 1340 (11th Cir. 2016). It would therefore be arbitrary and irrational to tether the cognizability of a prisoner's Davis claim to the happenstance of whether the judge decided to specify which clause he or she relied on, especially when that choice made no difference. See Peppers, 899 F.3d at 223–24. Such an approach would create "the absurd result" that, if two prisoners file the same § 2255 motions based on the same invalid § 924(c) convictions, the one with a silent record would be denied relief while the other would be entitled to relief if the sentencing judge years earlier had "thought to make clear that she relied on the residual clause." United States v. Booker, 240 F. Supp. 3d 164, 168 (D.D.C. 2017); see also Winston, 850 F.3d at 682; Peppers, 899 F.3d at 224.

The "may have relied" approach "does not deprive the [AEDPA's] gatekeeping

Hon. Lewis A. Kaplan  February 28, 2023
United States District Judge  Page 10

Re:   **United States v. Otis Parkes**
      **03 Cr. 1364 (LAK)**

requirements of force." Peppers, 899 F.3d at 224. Merely mentioning Davis in a successive § 2255 motion is "not enough." Id. The prisoner "must still show that it is possible he was sentenced under the now-unconstitutional residual clause." Id. "There are likely to be situations where the record is clear that a defendant was not sentenced under the residual clause, either because the sentencing judge said another clause applied or because the evidence provides clear proof that the residual clause was not implicated." Id. "When that happens, the movant cannot establish that he may have been sentenced under the residual clause, and the court must dismiss the § 2255 motion for lack of jurisdiction." Id. Indeed, Massey was just such a case. See 895 F.3d at 252–253. See also, e.g., Savoca, 21 F.4th at 233–36.

3.   In the alternative, if this Court adopts the government-favorable side of the split, the record and the background legal conditions demonstrate Parkes's Count 3 conviction was more likely than not based on § 924(c)(3)(B)'s residual clause.

At the threshold, we know with certainty that the jury relied on § 924(c)(3)(B)'s residual clause to convict Parkes on Count 4, the vacated 18 U.S.C. § 924(i)(1) count. The sole predicate for Count 4 was the Count 1 conspiracy to commit Hobbs Act robbery, and Count 1 can only have qualified as a predicate crime of violence pursuant to the residual clause. See Gov't Mem. 16 ("Hobbs Act robbery conspiracy was a crime of violence pursuant to the residual clause."). It is logical to infer that a jury that found Parkes guilty of Count 4 based on a conspiracy predicate (i.e., based on the residual clause) also found him guilty of Count 3—a lesser-included offense of Count 4, see United States v. Parkes, 497 F.3d 220, 234 (2d Cir. 2007)—based on the same predicate and the same residual clause. That inference has particular heft where, as here, the jury had the option of selecting either predicate for Count 3. See, e.g., Tr. 501–03. In fact, the inference is more compelling still because this Court did not give a specific unanimity instruction as to the crime-of-violence predicate for Count 3, so if even one juror found the same conspiracy predicate for Count 3 as all 12 jurors did for Count 4, then the Count 3 conviction rests, in a concrete sense, on the Count 1 conspiracy and thus § 924(c)(3)(B)'s residual clause.

We also know with certainty that this Court relied on the residual clause to classify Count 1 as a crime-of-violence predicate for Counts 3 and 4. Once again, that is because Count 1 can only have qualified pursuant to the residual clause, and because then-binding Second Circuit precedent held that conspiracy to commit Hobbs Act robbery was a crime of violence under the residual clause. Elder, 88 F.3d at 129; see Barrett, 903 F.3d at 175. This Court did not articulate the legal basis for classifying the Count 2 attempted Hobbs Act robbery as a crime of violence. But it is likewise logical to infer that rather than conducting a separate § 924(c)(3)(A) elements-clause analysis (without the assistance of any on-point precedent), this Court simply reasoned: If a conspiracy to commit Hobbs Act robbery "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," § 924(c)(3)(B), then an attempt to commit Hobbs Act robbery—which requires not just agreement but a substantial step—involves the same, if not a greater, risk. See supra § II.B.1.

Indeed, at the time of Parkes's trial in 2003, long before Johnson was a twinkle in Justice

**Re:** <u>United States v. Otis Parkes</u>  
03 Cr. 1364 (LAK)

Scalia's eye, the residual clause always offered the simplest path to crime-of-violence classification. <u>E.g.</u>, <u>Villanueva v. United States</u>, 191 F. Supp. 3d 178, 184 (D. Conn. 2016) (movant "more likely than not" was sentenced under ACCA's residual clause in 2000 because it was "the most obvious path" to an ACCA predicate, would "readily have encompassed" the relevant crime, and, unlike the elements clause, would have required "a minimum of statutory analysis"), <u>vacated on other grounds and remanded</u>, 893 F.3d 123 (2d Cir. 2018); <u>Shabazz v. United States</u>, 2017 WL 27394, at *5 (D. Conn. Jan. 3, 2017) ("[A] silence in the record should be read in favor of the petitioner because the Residual Clause, written to be a capacious catch-all, was the most direct and efficient route to establishing an ACCA predicate at the [relevant] time."), <u>vacated on other grounds</u>, 912 F.3d 73 (2d Cir. 2019). These "background legal conditions" support the inference that Count 3 rested on the residual clause. <u>Savoca</u>, 2022 WL 17256392, at *3 (quoting <u>Savoca</u>, 21 F.4th at 235); <u>Geozos</u>, 870 F.3d at 896–97.

  Comments at sentencing confirm that Counts 1 and 2 were notable for the risk of the use of physical force that they presented. <u>See</u> <u>Savoca</u>, 2022 WL 17256392, at *3 (habeas court may consider "'the parties' ... sentencing arguments'" and the "'sentencing hearing transcripts'" (quoting <u>Savoca</u>, 21 F.4th at 232)). For example, the government argued that Parkes's conduct "manifested an extraordinarily high risk that somebody was going to be injured and, indeed, killed." Sent'g Tr. 9. Similarly, this Court noted the "high" "likelihood that somebody was going to get shot," found that Parkes was "at least supremely reckless in walking in there with a gun," and observed: "You guys went there armed and ready for trouble, and it happened, and somebody got killed, as you knew was likely if there was a problem." Sent'g Tr. 32. <u>See also</u> Sent'g Tr. 33 (this Court noting "the high likelihood of a shooting); Sent'g Tr. 34 (this Court noting Parkes's "clear awareness of a very high degree of likelihood that somebody was going to end up dead or maimed in this venture"). These comments suggest the parties' understanding that the Hobbs Act offenses fit § 924(c)(3)(B)'s "substantial risk" language.

  The government counters that the record and background legal conditions establish that Count 3 rested on § 924(c)(3)(A)'s elements clause. As for the record, the government looks to this Court's definition of "robbery" in the jury charge (Gov't Mem. 16–19), and contends that "the Court—and the parties—understood that actual or threatened use of force was an element of attempted Hobbs Act robbery." Gov't Mem. 18. This argument is doubly mistaken.

  For one thing, the government omits part of this Court's definition of robbery—the nonviolent part. The government reproduces that part of the jury charge defining "robbery" to require "the taking of property ... against the victim's will by actual or threatened force, violence, or fear of injury, whether immediate or in the future." Gov't Mem. 17 (quoting Tr. 477–78). However, the government neglects to mention that "the use of a threat of force or violence might be aimed at ... causing economic rather than physical injury," and that "[f]ear exists if at least one victim expresses anxiety, worry over ... business loss or over financial or even job security." Tr. 478. <u>See also</u> Tr. 481 ("[W]henever I use the term robbery I am referring to ... the entire definition."). That is, this Court defined robbery—correctly, <u>see</u> 18 U.S.C. § 1951(b)(1), but nonviolently—to include taking property by placing a victim in fear of future economic loss.

Hon. Lewis A. Kaplan  February 28, 2023
United States District Judge  Page 12

**Re: United States v. Otis Parkes**
  **03 Cr. 1364 (LAK)**

That definition does not suggest the actual or threatened use of violent physical force. § 924(c)(3)(A). At most, it suggests a "risk" that force "may be used." § 924(c)(3)(B).

  For another thing, the government several times repeats the inaccurate assertion that "attempted Hobbs Act robbery, as defined by the Court for the jury, explicitly required use of actual or threatened force as an element of the offense." Gov' Mem. 17; see also Gov't Mem. 18 ("[T]he Court defined attempted Hobbs Act robbery to require actual or threatened force."). The jury instructions themselves make the government's error plain. This Court said that attempted robbery had two elements: "First, that the defendant intended to commit the crime of robbery, and second, that the defendant did some act that was a substantial step in an effort to bring about or accomplish the crime of robbery." Tr. 496. This Court did not say that the substantial step had to be violent, only that it had to go beyond "mere preparation"—although "sometimes some preparations may amount to an attempt"—and had to "clearly indicate an intent to commit the crime." Tr. 496–97. Worse, the government's contention that these elements (intent plus substantial step) necessitate the actual or threatened use of force runs headlong into Taylor: "An intention is just that, nothing more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or threatened to sue force against another person or his property." 140 S. Ct. at 2020.

  As for background legal conditions, the government points to Second Circuit precedents holding New York State attempted robbery offenses to satisfy other elements clauses. Gov't Mem. 19–20 (citing United States v. Galicia-Delgado, 130 F.3d 518, 520 (2d Cir. 1997) (18 U.S.C. § 16(a) elements clause), and United States v. Brown, 52 F.3d 415, 425–26 (2d Cir. 1995) (ACCA elements clause). But the elements of attempted New York robbery and attempted Hobbs Act robbery differ. Under federal law, an attempt merely requires "the intent to commit the object crime" and a "substantial step towards its commission." United States v. Farhane, 634 F.3d 127, 145 (2d Cir. 2011). See Tr. 496. Under New York law, in contrast, an attempt requires proof that the actor came "dangerously close" to completing the intended crime. E.g., People v. Lendof–Gonzalez, 163 N.E.3d 15, 17 (N.Y. 2020) (citing People v. Mahboubian, 543 N.E.2d 34 (N.Y. 1989)). Given this distinction, the fact that the Second Circuit had held that attempted New York robbery qualified as a "crime of violence" under certain elements clauses—i.e., that it had the "attempted use … of physical force" as an element—did not mean that attempted Hobbs Act robbery similarly qualified. See, e.g., United States v. Thrower, 914 F.3d 770, 776–77 (2d Cir. 2019) ("'New York's attempt statute is 'more stringent' than the 'substantial step' test ... adopted by [the Second Circuit].'" (quoting People v. Acosta, 80 N.Y.2d 665, 670 (1993)). As between the two background legal paths posited by the parties—following Elder, an on-point precedent with direct application to Count 1 and a fortiori application to Count 2, versus following Galicia-Delgado and Brown, cases addressing another jurisdiction's attempted robbery offenses and other federal statutes' elements clauses—it is far more likely that this Court chose the former, and thus relied on § 924(c)(3)(B)'s residual clause to categorize Count 2 as a crime of violence.

Hon. Lewis A. Kaplan  
United States District Judge

February 28, 2023  
Page 13

Re:   **United States v. Otis Parkes**  
      **03 Cr. 1364 (LAK)**

### III. This Court May, But Need Not, Conduct A <u>De Novo</u> Resentencing.

This Court directed the parties to "address the question whether, if the conviction on Count 3 were vacated, defendant must or may be resentenced <u>de novo</u>." Cr. Dkt. No. 229. The government did not address this question. However, the Second Circuit has since held that <u>de novo</u> resentencing is not mandatory in this situation: Following the vacatur of a count of conviction, "§ 2255's statutory text vests district courts with discretion ... to decide whether or not to conduct a <u>de novo</u> resentencing." <u>United States v. Pena</u>, 58 F.4th 613, 615 (2d Cir. 2023).

In <u>Pena</u>, the movant was convicted of three counts of murder for hire, 18 U.S.C. § 1958, and two counts of using a firearm to commit murder, § 924(j)(1), and was sentenced to five concurrent life terms. After the § 924(j)(1) counts were vacated in light of <u>Davis</u>, the movant sought <u>de novo</u> resentencing on the murder-for-hire counts. The district court declined to conduct a <u>de novo</u> resentencing, reasoning that the unaffected murder-for-hire counts still carried mandatory life terms. See 58 F.4th at 615–18. The Second Circuit affirmed, rejecting the movant's argument that <u>de novo</u> resentencing was mandatory. Rather, <u>Pena</u> explained that § 2255 "grants district courts the discretion to choose among four remedies when reviewing a sentence that was not authorized by law or is otherwise open to collateral attack. ... A court may: '[1] vacate and set the judgment aside and ... discharge the prisoner or [2] resentence him or [3] grant a new trial or [4] correct the sentence as may appear appropriate.'" <u>Id.</u> at 618 (quoting 28 U.S.C. § 2255(b)). On <u>Pena</u>'s particular facts, the Circuit held that the district court did not abuse its discretion in declining to conduct a <u>de novo</u> resentencing, as the movant remained subject to life sentences on the murder-for-hire counts. Consequently, "[a]ny resentencing would have been 'strictly ministerial,' serving simply to delete the sentences on the now-vacated counts." <u>Id.</u> at 623 (quoting <u>United States v. Powers</u>, 842 F.3d 177, 180 (2d Cir. 2016) (<u>per curiam</u>)). <u>Pena</u> approved the approach that this Court followed in Parkes's case (Cr. Dkt. No. 214, at 2–3) and in <u>United States v. Ayyad</u>, 2020 WL 5018163 (S.D.N.Y. Aug. 24, 2020). See 58 F.4th at 619.

Under <u>Pena</u>, if this Court were to vacate Count 3, <u>de novo</u> resentencing would not be required. Rather, this Court would have discretion either to resentence or to do what it did in this case and in <u>Ayyad</u>—vacate Count 3 and issue an amended judgment so reflecting. See <u>United States v. Ayyad</u>, 2023 WL 1975682 (2d Cir. Feb. 14, 2023) (applying <u>Pena</u>, affirming this Court's decision not to resentence <u>de novo</u> following vacatur of § 924(c) count). True, <u>Pena</u> said in dictum: "It may be that in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies <u>de novo</u> resentencing." 58 F.4th at 623. But <u>Pena</u> clarified: "[W]e need not and do not attempt today to define the circumstances under which a district court abuses its discretion in denying <u>de novo</u> resentencing. It is enough, in light of the facts of the case at bar, to conclude only that a district court may properly deny <u>de novo</u> resentencing when the exercise would be an empty formality, as it would be here." <u>Id.</u> Here, this Court has already imposed statutory-maximum sentences on Counts 1 (20 years), 2 (20 years), and 5 (10 years). Parkes Mem. 6. And this Court has observed that Parkes "can be sentenced only to 20 years on Counts 1, 2, and 5." Parkes Mem. 6 (quoting Cr. Dkt. No. 135, at 4). Thus, as in <u>Pena</u>, this Court have discretion not to conduct a "strictly ministerial" resentencing.

Hon. Lewis A. Kaplan                                                                February 28, 2023
United States District Judge                                                                    Page 14

**Re:    United States v. Otis Parkes**
       **03 Cr. 1364 (LAK)**

## Conclusion

      This Court should grant Parkes's successive § 2255 motion, vacate his Count 3 conviction and sentence (in addition to Count 4, which this Court has already vacated), and issue an amended judgment so reflecting.

                                                                           Respectfully submitted,

                                                                           /s/ Daniel Habib, Esq.
                                                                           Assistant Federal Defender
                                                                           Tel.: (646) 484-1724

CC:    Government counsel (by ECF)